FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 04, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEE & HAYES P.C., a Washington professional corporation,<br><br>        Plaintiff,<br><br> v.<br><br>CONTINUOUS COMPOSITES INC., a Delaware corporation,<br><br>        Defendant. | NO. 2:24-CV-0375-TOR<br><br>ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS |

BEFORE THE COURT are Plaintiff's Motion for Partial Summary Judgment (ECF No. 62) and Defendant's Motion for Summary Judgment (ECF No. 64). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiff's Motion for Partial Summary Judgment (ECF No. 62) is GRANTED in part and DENIED in part and Defendant's Motion for Summary Judgment (ECF No. 64) is DENIED.

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 1

## BACKGROUND

This case arises out of claims of breach of contract, breach of implied duty of good faith and fair dealing, and foreclosure of Attorney Fee Lien, RCW 60.40.010-.030.  ECF No. 1 at 7-11.  Defendant, Continuous Composites ("CC"), lodges counterclaims for declaratory judgment and petition to review reasonableness of fees.  ECF No. 45 at 17-18.  Defendant also provided affirmative defenses of failure to state a claim, modification of the contract, doctrines of waiver, laches, estoppel or unclean hands, foreclosure of attorney lien is deficient, exaggerated damages that must be reduced, failure to mitigate damages, poor performance of counsel, unreasonable fees, and potential other defenses.  ECF No. 45 at 11-12.  These claims stem from disputes regarding a contingency fee agreement where Plaintiff, Lee & Hayes P.C. ("L&H"), served as legal counsel for Defendant, Continuous Composites ("CC").  ECF No. 89 at 3-5.  Plaintiff states that Defendant owes $7.2 million, whereas Defendant states the contingency fee agreement was modified to $3 million fixed fee rate for complete satisfaction of the Plaintiff's legal responsibilities.  ECF Nos. 87 at 1; 89 at 4.

Plaintiff billed for legal services under a contingency fee agreement ("Contingency Agreement") for payment for representing Defendant in a patent infringement case in the United States District Court of Delaware against Markforged, Inc ("Markforged").  ECF No. 89 at 5.  On April 11, 2024, the jury

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 2

returned a favorable verdict to Defendant.  ECF No. 89 at 5-6, 44.  On April 24, 2024, judgment for the verdict was entered in the amount of $17,341,310.  ECF No. 89 at 45.  The judgment represents that this amount is "for a reasonable royalty for the period November 16, 2021, through December 31, 2023."  ECF Nos. 67-3 at 1; 81 at 5; 92 at 5.

After that, both parties of the litigation, Defendant and Markforged filed post-trial motions.  ECF No. 89 at 45.  Additionally, Plaintiff sent Defendant their last invoices under the Contingency Agreement.  ECF No. 89 at 45.  However, Defendant was dealing with financial issues and struggled to maintain viability.  ECF No. 81 at 8.

On June 25, 2024, Markforged's CEO, Shai Terem, offered to purchase CC for $10M but CC's CEO, Steve Starner, declined the offer and did not relay this offer to CC's board of directors.  ECF Nos. 88 at 1; 89 at 46-47; 81 at 8.  On July 30, 2024, Starner texted Terem, regarding Defendant's ongoing "strategic decisions."  ECF No. 89 at 47.  On August 21, 2025, Starner texted Terem stating that the "strategic activities" were complete and he would like to discuss possibilities regarding settlement of the "patent issue."  ECF No. 89 at 47.  At the end of August 2024, Defendant's board discussed settlement options and offers to present to Markforged.  ECF No. 89 at 47-48.

On August 27, 2024, Starner emailed Markforged counteroffering $40

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 3

million in response to Markforged's $10 million offer from June.  ECF No. 89 at 50.  This was forwarded to Defendant's board.  ECF No. 89 at 50.  On August 29, 2024, Markforged responded with a settlement offer of $15.5 million in cash.  ECF No. 89 at 50.  This resulted in Starner sending a summary of this conversation and proposing a $35 million counteroffer to the board for feedback.  ECF No. 89 at 50.  CC Board Chairperson, Todd Sims, provided an analysis of the proposed deal which included the payment of $6.8 million to Plaintiff and Sims reiterates Starner's plan to "negotiate [the] figure down."  ECF No. 89 at 28, 51 (quoting 66-23 at 2).  On August 31, 2024, Defendant offered the $35 million counteroffer to Markforged.  ECF No. 89 at 51.  On September 4, 2024, Markforged and Starner scheduled a time to meet for September 5, 2024, at 7:00 a.m. PDT.  ECF No. 89 at 52.

On September 5, 2024, at 7:12 a.m., Starner messaged Defendant's board stating that Markforged offered $18 million and $1 million each year for the next three years, resulting in a $21 million total.  ECF Nos. 89 at 52; 65-26 at 1.  Starner messaged Sims about breaking down the numbers and stated that Plaintiff would receive 30% up to 2x their fees, which is roughly $6.8 million.  ECF Nos. 89 at 52; 65-26 at 1-2.  As a result, Plaintiff would receive $4.6 million now and $300k each for the next three years.  ECF No. 89 at 52; 65-26 at 1-2.  On the same day, at 7:18 a.m., Starner text messaged CC's Vice President of Intellectual Property and

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 4

Technology, Ryan Stockett, asking whether he had engaged in any conversations with Plaintiff about "$3M to settle our contingency?"  ECF Nos. 82 at 9; 89 at 53-54.  Stockett responded in the negative and that he would set up those conversations.  ECF No. 89 at 54.

Stockett attempted to reach out to Plaintiff.  ECF No. 89 at 55-56.  Starner inquired into Stockett about the costs of the litigation with Markforged and costs owed to Plaintiff.  ECF No. 89 at 56.  Stockett responded that Plaintiff billed $3.7 million in contingency time and resulted in their payout to be around $7.4 million.  ECF No. 89 at 56.  Starner did not respond to Stockett when asked whether Defendant's board was coming down in expectations or whether Starner thought he could get Markforged to come up.  ECF No. 89 at 56.

Shortly after, Stockett called Plaintiff.  ECF Nos. 89 at 69; 81 at 11.  While Stockett and a partner at L&H, James Stein, engaged in a call at 8:00 a.m. on September 5, 2026, the only memorialization of the call was a text between Stockett and Starner.  ECF Nos. 82 at 9; 89 at 69-70.  Plaintiff did not know of settlement discussions before this phone call.  ECF No. 89 at 70.  During this call, the parties discussed the viability of Markforged and Stockett relayed Starner's request to Stein.  ECF Nos. 89 at 62, 66-69; 92 at 12-15.  Plaintiff states that Stein was discussing methods to figure out this issue, whereas Defendant states that Stein said that Plaintiff would accept a fixed payment of $3.7 million.  ECF No. 89

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 5

at 75.  At 8:22 a.m., messages between Stockett and Starner show that Stockett told Starner that "[t]he message [was] making its way up the ladder to the Board" and that a partner from L&H said they "could probably do 1x without too much trouble."  ECF Nos. 89 at 70; 67-12 at 1.  However, Stockett continues in the text message and states that he informed him that it would not be good enough and the L&H partner said he "would push for lower but didn't think they would go for 50%."  ECF Nos. 89 at 70; 67-12 at 1.

After that, L&H CEO, Rob Hartman, L&H patent attorney, Dominic Ciminello and Stein met on a phone call to discuss "CC settlement terms."  ECF No. 89 at 71.  While the conversation was not memorialized, it appears the general idea was regarding Stein's previous conversation and Plaintiff's potential to take a different payment for Defendant to complete a settlement with Markforged.  ECF No. 89 at 72-73.

Later, Stein and Stockett spoke with each other over a phone call, however, the outcome is disputed between the parties.  ECF No. 89 at 75-77.  It appears Stein was concerned with the numbers to ensure that they receive an appropriate amount for their work.  ECF No. 89 at 76-79.  In reference to this call, on September 5, 2024, at 4:22 p.m., Stockett text messaged Starner stating that Plaintiff "agreed to 1x their cost" but prefer to continue the appeal process but "suggested that if we had to go to $3 million as a fixed fee for them in order to

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 6

negotiate the settlement now, they probably would be willing to. But they won't commit today to that." ECF Nos. 89 at 79-80; 62-27 at 5; 92 at 16-17.

Later on, Stockett emailed Stein with concerns of Markforged's success and viability and stated that Markforged wanted to settle quickly. ECF No. 89 at 82. In this email, Stockett referred to the "low numbers" being offered by Markforged and that an acceptable number may only be reached if Plaintiff agrees to a fixed amount for their satisfaction of obligations. *Id.* Stockett ended the email asking Plaintiff to confirm that payment to Plaintiff in the amount of $3.7 million would be acceptable and if the amount could be lowered to $3 million. ECF Nos. 89 at 86; 65-1 at 5. Relying on Stockett's words, Starner emailed the board to let them know that instead of the original $6.8 million that would be owed, Plaintiff's board has approved the fixed payment of $3.7 million but they are waiting to hear back about the consideration of $3 million. ECF Nos. 89 at 88; 65-3 at 51; 92 at 23-24.

On the morning of September 6, 2024, Stein forwarded Stockett's email to Hartman, Ciminello and L&H CFO, Dave Massey. ECF No. 89 at 91. Hartman forwarded the email to Plaintiff's board. ECF No. 89 at 91. Plaintiff's board discussed the email and had an understanding that the Markforged settlement numbers were less than the $17,341,310 verdict and that the discussions were still in the early stages. ECF No. 89 at 93.

On the same day, Hartman responded to Stein and stated that Plaintiff's

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 7

board was conducting research and wanted to help Defendant and recoup "what we can" but there is a "general appetite for 3 million on our end, subject to the above research." ECF No. 89 at 95.

On September 8, 2024, Defendant met with Markforged and discussed a counteroffer of $27 million. ECF No. 89 at 99.

On September 9, 2024, at 9:55 a.m., Stein sent an email to Stockett responding to his email from September 5, 2024, stating that

> [a]fter conferring with our Board, I confirm that Lee & Hayes would be willing at this time and, as part of a settlement between Continuous Composites and Markforged, to accept the sum of $3,000,000 in full and complete satisfaction of our contingent attorneys' fees incurred in representing Continuous Composites in the Delaware litigation against MarkForged.

ECF Nos. 65-1 at 4; 92 at 36-37. Stein continues that

> The Board would appreciate your keeping us in the loop on the settlement negotiations as they progress. And when you have a moment, please share a breakdown of how the settlement funds would get distributed among hard costs, Lee & Hayes, Orrick, and Continuous Composites under the assumption that the settlement amount is sufficient for Lee & Hayes to receive $3M in satisfaction of its contingent fee.

ECF No. 65-1 at 4-5. The email continues with notes stating that as the details are worked through, that the $3 million amount is the floor and that Plaintiff's board is "not inclined to accept less than that." ECF Nos. 89 at 107; 65-1 at 5. Moreover, Stein's last note states that the verdict is "worth significantly more 'on paper' than

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 8

the settlement numbers currently under consideration.  By settling now, Continuous Composites would trade the potential for more (or less, or no) money in the future, upon resolution of the appeal, for a certain amount now."  ECF Nos. 89 at 108-09; 65-1 at 5.

After Stockett forwarded this email to Starner, Starner replied asking in bold "[s]hould we consider this email definitive enough to proceed?  I'm going to assume yes, but maybe let's get their concurrence that we don't need to create an addendum to our prior agreement."  ECF Nos. 65-1 at 3; 89 at 114-18.  Starner continues that they will keep Plaintiff in the loop but he did not feel comfortable sharing a breakdown until the financial terms are complete.  ECF No. 65-1 at 3. Stockett forwarded Steve's message to Stein and reiterated Starner's bolded question.  ECF No. 65-1 at 2.

Later that day, around 2:01 p.m. and 2:09 p.m., Starner and Stein discussed on a phone call.  ECF Nos. 89 at 118-19; 65-6 at 54-7. Stein alleges that he was concerned about Defendant receiving a "windfall and leaving [Plaintiff] behind." ECF No. 65-6 at 54.  Stein furthers that he requested a breakdown.  ECF No. 65-6 at 56.

At 2:06 p.m., Hartman messaged Starner stating he was talking to the board and if he thinks they could get to $5 million up front.  ECF No. 65-4 at 3.  Starner responded alleging that he thought there was a commitment for at least $3.7

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 9

million and was waiting for confirmation for $3 million.  ECF No. 65-4 at 2-3.  Hartman informs Starner that "[t]hose discussions were all on the assumption that you were negotiating lesser amounts than the actual judgment. We obviously didn't have [sic] the full information."  ECF No. 65-4 at 2.  Around 3:00 p.m., Starner met with Markforged and Markforged countered with a settlement offer of $25 million.  ECF No. 89 at 120.  Starner alleges that he told Terem the offer "sounds okay" but details need to be figured out.  ECF Nos. 67-7 at 5-6; 71-7 at 5-6.

On September 9, 2024, at 9:39 p.m. Starner emailed Stein regarding those the current settlement discussions "will likely be around $21M."  ECF No. 66-6 at 3.  Starner also stated that "Please let me know if L&H's Board can approve the $3M to settle all fees and costs associated with your work on this."  ECF No. 66-6 at 3.  Starner ends the email stating "we can't without confirmation for you." ECF Nos. 66-6 at 3; 66-2 at 9.  Stein then forwarded this email to Ciminello, Hartman, Shaun Cross and Massey.  ECF Nos. 66-6 at 3; 89 at 125.

Between September 9, 2024, 7:50 p.m. to September 10, 2024, 3:10 a.m. Massey and Hartman sent emails discussing the $21 million potential settlement figure and effect to Plaintiff under the Contingency Agreement.  ECF Nos. 66-6 at 2; 89 at 126-28.

On the morning of September 10, Stein requested to speak to Starner over

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 10

email and Starner requested approval from Defendant's board.  ECF No. 89 at 128. At 11:00 a.m., Plaintiff and Defendant met over Teams where Plaintiff stated there was no agreement, but Starner believed they wanted to "go back on what they had just sent … that morning – or the morning before in writing."  ECF Nos. 89 at 129; 65-3 at 59.

On September 10, 2024, at 5:48 p.m., Hartman emailed Starner reiterating

> [l]ike any investment/contingent-fee litigation, the amount we would be comfortable with really depends on the settlement amount, so it's hard to put a number down in the abstract without that information. The number we would feel comfortable with a $10m settlement is different than the amount we would feel comfortable with a $25m settlement. Is that fair?

ECF Nos. 66-2 at 6; 89 at 134.  Hartman continues that they feel they have been a good partner and that if an answer is required that day, that "the board feels our only rational choice is to stick with our existing agreement."  ECF Nos. 66-2 at 6; 89 at 134

On September 11, 2024, at 4:45 p.m., Starner responds to Hartman stating that Stein confirmed on September 9, that Plaintiff had approved the $3 million payment to fully satisfy Plaintiff's "fees related to this matter."  ECF No. 66-2 at 4. Also, that Defendant "accepted that offer and subsequently relied on it during negotiations with MF."  ECF No. 66-2 at 4.  On September 11, 2024, at 5:19 p.m., Starner texted Markforged stating that the Defendant's board approved

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 11

Markforged's $25 million settlement offer.  ECF No. 89 at 138.

On September 11, 2024, at 9:52 p.m., Barney sent an email to Starner stating that Plaintiff's consideration of taking $3 million or $3.7 million was based on Defendant's statement that "low numbers currently being offered by Marked forged." ECF No. 66-2 at 4.  Plaintiff furthers that this statement was "made to induce [Plaintiff] to accept an amount lower than what we would be owed pursuant to our agreement." ECF No. 66-2 at 4.

On September 19, 2024, Starner sent an email stating to Barney that Defendant "reached an agreement in principle with Markforged" and that was reliant on Plaintiff's "written confirmation that it was willing to accept $3 million in full and complete satisfaction of the contingency agreement it has with [Defendant]." ECF No. 66-2 at 3.  The email continues that "[i]ndeed, while you allege that we gave false information, Rob [Hartman] previously confirmed that it was a bad assumption on the part of [Plaintiff]." ECF No. 66-2 at 3.

On September 20, 2025, Defendant and Markforged executed the settlement and patent licensing agreement based on the discussed $25 million.  ECF No. 89 at 141.  Throughout October of 2024, the parties disagreed on the amount owed.  ECF No. 89 at 147-51.  Defendant states they owe and will only pay $3 million, and Plaintiff states they are owed a different amount under the Contingency Agreement.  ECF No. 89 at 147-51.  As of now, Defendant has not paid Plaintiff

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 12

any compensation pending this litigation.  ECF No. 62 at 30.

## DISCUSSION

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56.  A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A material fact is 'genuine'…if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The burden initially rests with the moving party; however, once that burden is met, it shifts to the non-moving party.  *Id.* at 257.

"[S]ummary judgment should be granted where the evidence is such that it 'would require a directed verdict for the moving party.'" *Anderson*, 477 U.S. 242, 251 (1986) (quoting *Sartor v. Arkansas Gas Corp.,* 321 U.S. 620, 624 (1944)).  Additionally, if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" then the moving party is "entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56).

The Court "must view the evidence in the light most favorable to the nonmoving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In other words, if the moving party provides direct

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 13

evidence that conflicts with the non-moving party's direct evidence, the court "must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.,* 809 F.2d at 631.  Additionally, the Court shall state the reasons for granting or denying the motion on the record.  FED. R. CIV. P. 56.

## The Parties' Cross-Motions for Summary Judgment

Plaintiff argues the Court should dismiss Defendant's declaratory judgment counterclaim and affirmative defenses 2 and 7 because the Contingency Agreement was not modified.  ECF No. 62 at 5.  Affirmative defense 2 refers to Plaintiff's written statement asserting that $3 million will suffice constituted a modification of the Contingency Agreement and that Defendant reasonably relied on that when negotiating with Markforged.  ECF No. 45 at 11.  Affirmative defense 7 states that if Plaintiff suffered harms beyond the modified $3 million amount, then Plaintiff failed to mitigate damages.  ECF No. 45 at 11-12.  Plaintiff argues summary judgment under four legal principles: lack of consideration, lack of mutual assent, procurement by material and fraudulent misrepresentation and Defendant's reliance defense is unjustified.  ECF No. 62 at 5.

"Modification of a contract by subsequent agreement of the parties arises out of the parties' intention and requires a meeting of the minds." *Dragt v. Dragt/DeTray, LLC*, 139 Wash. App. 560, 571 (2007) (citing *Wagner v. Wagner,*

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 14

95 Wash. 2d 94, 103 (1980)).  To determine intent of the parties, the Court looks to "[s]ubsequent acts and conduct." *Tanner Elec. Co-op v. Puget Sound Power & Light Co.,* 128 Wash. 2d 656, 674 (1996)).  "[T]he modification must involve a mutual change of rights or obligations (consideration) and mutual assent." *USI Ins. Servs. Nat'l, Inc. v. Ogden*, 371 F. Supp. 3d 886, 896 (W.D. Wash. 2019) (citing *Flower v. T.R.A. Indus., Inc.*, 127 Wash. App. 13, 27-28 (2005)).  The burden is on the party asserting modification to prove that the parties intended to modify the agreement.  *Flower,* 127 Wash. App. at 28.

Mutual assent requires an offer and acceptance.  *Dragt*, 139 Wash. App. at 571.  In Washington, the test for mutual assent is objective manifestation. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d 171, 177–78 (2004).  The presence of mutual assent is a question of fact.  *Keystone*, 152 Wash. 2d at 178 n.10.  However, "[a] question of fact may be determined as a matter of law where reasonable minds could reach but one conclusion.*" Keystone*, 152 Wash. 2d at 178 n.10 (quoting *Ruff v. King County,* 125 Wash. 2d 697, 703–04 (1995)).

Additionally, for a valid modification, there must be separate and independent consideration from the original contact.  *Dragt v. Dragt/DeTray, LLC*, 139 Wash. App. 560, 572 (2007).  "Consideration is any bargained for act or forbearance." *Drag,* 139 Wash. App. at 572 (citing *Adams v. Univ. of Wash.*, 106 Wash. 2d 312, 327 (1986)).  For example, there is not consideration "when one

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 15

party is to perform some additional obligation while the other party is simply to perform that which he promised in the original contract." *USI Ins. Servs. Nat'l, Inc. v. Ogden*, 371 F. Supp. 3d 886, 897 (W.D. Wash. 2019) (quoting *Labriola v. Pollard Group, Inc.*, 152 Wash. 2d 828, 834 (2004)).  The consideration must "involve[] new promises or obligations previously not required of the parties." *Ogden*, 371 F. Supp. 3d at 897 (quoting *Labriola,* 152 Wash. 2d at 834). Determining whether there is consideration to support a contract is a question of law and can be resolved on summary judgment.  *King Cnty. v. Taxpayers of King Cnty.*, 133 Wash. 2d 584, 598 (1997).

### A. Defendant's Defense of Valid Modification

Plaintiff alleges that any modification is invalid due to lack of independent and separate consideration.  ECF No. 62 at 11-14.  Plaintiff states that Defendant did not offer any additional or new promises.  ECF No. 62 at 13.  Also, Plaintiff's legal obligation would be the same and it already performed.  ECF No. 62 at 14. Defendant responds that the consideration was Plaintiff's surrender of contractual rights to a percentage of a varying final recovery and Defendant became responsible to pay a new lump sum.  ECF No. 82 at 17.  Plaintiff also forfeited the right for any post-judgment enforcement.  ECF No. 82 at 18.  Moreover, Defendant reiterates this in their Motion for Summary Judgment.  ECF No. 64 at 23-24.

Plaintiff did not provide any new or independent consideration for this

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 16

modification.  Neither party disputes that Plaintiff's legal services were the same.  ECF No. 82 at 23-24.   Defendant alleges that Plaintiff surrendered contractual rights to a percentage based on final recovery and the right for post-judgment enforcement.  ECF No. 82 at 17-18.  However, this is not explicitly stated in the discussions, nor does it change the fact that Plaintiff's services did not change and were essentially complete.  Giving up contractual rights and accepting a lesser payment amount does not represent any new obligations or promises beyond the modification itself.  The payment terms are adjusted but Plaintiff's performance is the same.

Defendant attempts to distinguish from *Rosellini v. Banchero*, 83 Wash. 2d 268 (1974), but in this case and here the performance of one party was unchanged.  *Rosellini v. Banchero*, 83 Wash. 2d 268 (1974).  For example, "[u]nder the oral contract plaintiff had an antecedent duty to complete the building; defendant had an antecedent duty to pay a maximum of $56,146 plus extras, plus sales tax.  Under the October 17th agreement plaintiff had the same duty while defendant had a lesser duty, unsupported by consideration."  *Rosellini v. Banchero*, 83 Wash. 2d 268, 273 (1974).  This case represents where the Plaintiff's performance was the same, but the other side had a lesser duty of payment which is not considered consideration.  Here, Plaintiff essentially completed performance for the same legal services and Defendant's payment is changed and even appears to owe less to

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 17

Plaintiff for the same work performed.  This is what the courts aim to avoid.  *See Alaska Packers' Ass'n v. Domenico*, 117 F. 99, 102 (9th Cir. 1902) (concluding that there was no consideration where the party demanded increased compensation for the same work).

Even more, while Defendant relies on *Swain v. McNerney*, 85 Wash. App. 1059 (1997), there was consideration because the defendant gave up their right to have the plaintiff perform the full original contract, whereas the defendant surrendered his right to receive the payment for the full contract.  *Swain v. McNerney*, 85 Wash. App. 1059 (1997).  This is different performance for different compensation.  This is not the same as the case here.

While generally, the relinquishment of rights can constitute consideration, it is not typically in the context of payment terms.  For example, it is typically seen where a party gives up the right to prosecute a valid claim.  *Huberdeau v. Desmarais*, 79 Wash. 2d 432, 441 (1971) ("Forbearance to prosecute a valid claim constitutes a good consideration, but the claim must be valid or have reasonable prospects of successful prosecution.").  However, relinquishment of other rights has also been deemed as valid consideration.  *Exeter Co. v. Samuel Martin, Ltd.*, 5 Wash. 2d 244, 248–49 (1940) ("The relinquishment by appellant and respondent of their mutual rights under the lease is sufficient consideration to support the agreement of surrender."); *Crown Plaza Corp. v. Synapse Software Sys., Inc.*, 87

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 18

Wash. App. 495, 502 (1997) (finding that consideration is sufficient where a leasor surrendered their right to collect the remainer of rent and the tenant gave up the right to continue to occupy the building).  However, none of these represent where a party gave up part of their payment right as a forbearance, especially in the case where the performance was the same.  Therefore, it is not considered consideration.  Summary judgment is proper for Defendant's affirmative defense 2, stating that a valid modification to the contract existed.  ECF No. 45 at 11-12. Additionally, summary judgment for declaratory judgment is proper because there was not a legal modification with sufficient consideration.  ECF No. 45 at 17.

Since consideration is required for contract modification, the Court need not consider whether mutual assent was present.  *See Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1231 (9th Cir. 2022).  However, for many of the same reasons discussed next regarding Defendant's reliance defense, these communications would also fail for mutual assent.

Also, Plaintiff alleges that Defendant intentionally misrepresented the settlement numbers to induce modification.  ECF No. 62 at 21.  However, the court established there was no valid consideration to constitute a modification. Therefore, this argument is now moot.

**B. Defendant's Reliance Defense**

Plaintiff argues that Defendant fails to allege the necessary elements for

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 19

estoppel.  ECF No. 62 at 26.  Defendant's second affirmative defenses argue that Defendant reasonably relied on Plaintiff's communications regarding the $25 million settlement with Markforged and the doctrine of promissory estoppel is applicable.  ECF Nos. 45 at 11-12; 62 at 26.  However, Defendant did not explicitly plead a claim or defense for promissory estoppel.  ECF Nos. 88 at 11; 45 at 11-12.  Nevertheless, Defendant argues promissory estoppel.  ECF No. 82 at 28-29.

"Promissory estoppel requires (1) a promise (2) where the promisor reasonably expected to cause the promisee to change his position, (3) which in fact did cause the promisee to change his position (4) by justifiably relying on the promise in such a manner (5) that injustice can be avoided only by enforcement of the promise."  *Sloma v. Washington State Dep't of Ret. Sys.*, 12 Wash. App. 2d 602, 622 (2020) (citing *Jones v. Best*, 134 Wash. 2d 232, 239 (1998)).  It requires a promise that is "clear and definite."  *Sloma v. Washington State Dep't of Ret. Sys.*, 12 Wash. App. 2d 602, 622 (2020) (quoting *Havens v. C & D Plastics, Inc.*, 124 Wash. 2d 158, 172-73 (1994)).  "The promise must also be one which the promisor would reasonably expect to cause the promisee to change his position in reliance on the promise."  *Havens v. C & D Plastics, Inc.*, 124 Wash. 2d 158, 173–74 (1994).

This "doctrine [is] traditionally limited to enforcement of otherwise

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 20

unenforceable promises which are not supported by consideration." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wash. 2d 255, 261 (1980). However, this "doctrine may not be used as a way of supplying a promise." *Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wash. App. 5, 13 (2004).

Plaintiff contends that Defendant did not reasonably rely on their communications, Defendant did not rely to their detriment, and Defendant had the means to discover the true facts of Plaintiff's position but intentionally avoided doing so. ECF No. 62 at 26-27.

First, element two, whether Defendant reasonably relied on Plaintiff's communications is at issue. While this appears to generally be a question of fact, the Court may determine questions of fact as a matter of law if reasonable minds could only reach one conclusion. *Ruff v. Cnty. of King*, 125 Wash. 2d 697 (1995).

In the email that is continuously referred to by Defendant as a promise or confirmation of an alleged fixed fee, Plaintiff expresses the need for additional information and the willingness to consider $3 million in place of the Contingency Agreement is based on Plaintiff's knowledge of the settlement's "low numbers." ECF Nos. 65-1 at 4-5; 65-6 at 48-49, 58. For example, Plaintiff states "under the assumption that the settlement amount is sufficient for Lee & Hayes to receive $3M in satisfaction of its contingent fee." ECF No. 65-1 at 4-5. Additionally, Plaintiff asks to stay in the loop on the settlement discussions and to share a

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 21

breakdown of how the settlement funds would be distributed.  ECF No. 65-1 at 4-5.  Even more, Plaintiff expresses concern about settling now and the settlement amount.  ECF No. 65-1 at 4-5.

While the beginning language states, "can confirm, at this time, would be willing to accept $3 M" appears to be an acceptance on its own, the rest of the email makes it clear that it is not.  ECF Nos. 65-1 at 4; 92 at 36-37.  However, intent to do something is not a promise to do it and an agreement to negotiate further based on other information is only negotiations.  *Pac. Cascade Corp. v. Nimmer*, 25 Wash. App. 552, 556 (1980).   It is clear from the context of the same email that it was not a concrete acceptance, modification, or promise.

This is further supported by Defendant's actions.  Defendant orally agreed to Markforged's $25 million counteroffer before confirming with Plaintiff that the email was sufficient to move forward.  ECF Nos. 67-7 at 5-6; 71-1 at 5-6; 89 at 120.  Moreover, while Stein's email alone may have constituted a dispute regarding whether there was good reason to rely on that as confirmation, Starner was still unclear whether that was confirmation.  ECF Nos. 65-1 at 3; 89 at 114-18.  A party's actions, communications and assertions may be used to determine whether someone reasonably relied on representations.  *See Ex. Clarity Cap. Mgmt. Corp. v. Ryan*, 18 Wash. App. 2d 1035 (2021) (finding that it was not reasonable for a party to rely on the other party's assent to clauses in an employee

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 22

manual when the manual itself rejects that it is a contract or promise of employment).  This shows that the alleged communications from Plaintiff did not show that it was "clear and definite" but rather the opposite.

Even more, Defendant continued with negotiations for settlement despite receiving clear confirmation from Plaintiff that they did not accept $3 million in place of the Contingency Agreement.  ECF Nos. 6-5 at 2-3; 89 at 120; 67-7 at 5-6; 71-7 at 5-6.  Even more, once Plaintiff states they did not confirm a modification, and the original agreement is their "only rational choice", Defendant messaged Markforged stating that Defendant's board approved the $25 million settlement offer.  ECF Nos. 66-2 at 6; 89 at 134; 80 at 138. Continuing despite knowing that there is no confirmation of any modification or change in payment shows that element four was not met because it was not justifiable to rely on Plaintiff's communications.  *Uznay v. Bevis*, 139 Wash. App. 359, 371 (2007) ("These steps cannot be used to show justifiable, detrimental reliance on the part of Uznay since they occurred after he had been informed the deal was dead.").  Therefore, a reasonably jury would not conclude differently because the promise was not clear and definite, and Defendant did not justifiably rely on the Plaintiff's communications.  As a result, summary judgment is proper because there is not a dispute of material fact and Defendant failed to properly allege necessary elements of this doctrine.

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 23

Also, Plaintiff argues that Defendant's position improved, and it did not rely on Plaintiff's communications when discussing the settlement with Markforged. ECF No. 62 at 27.  It appears that Defendant's position improved because the settlement was for $25 million whereas the verdict was for $17,341,310.  ECF No. 89 at 45, 141.  However, whether this would stay true after the appeals process is unclear.  Nevertheless, Defendant's messages showed they assumed or relied on Plaintiff's communication to move forward with the settlement negotiations.  ECF No. 66-2 at 4.  However, as previously discussed, once it was clear to Defendant that Plaintiff did not agree to the fixed fee amount this did not stop Defendant from continuing settlement discussions.  Therefore, it was not reasonable to rely on these communications.

Next, Plaintiff argues that Defendant did not attempt to obtain the true facts of Plaintiff's position.  ECF No. 62 at 27.  Since Defendant was concerned about confirmation of the fixed fee change, and waiting on a response from Plaintiff, and continued with Markforged, Defendant an opportunity to receive the facts but instead moved forward with discussions.  ECF Nos. 66-2 at 6; 89 at 134; 80 at 138.

Even more, while Defendant's promissory estoppel argument fails regardless, Plaintiff added an additional argument in their reply stating that promissory estoppel is a claim not a defense.  ECF No. 88 at 10.  Promissory estoppel is a cause of action or used as a sword, whereas equitable estoppel is a

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 24

defense used as a shield. *Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 918 (9th Cir. 2001); *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wash. 2d 255, 259 (1980). Defendant does not allege equitable estoppel or establish the necessary elements or facts necessary to prove the claim. ECF No. 82; *Rhoades v. City of Battle Ground*, 115 Wash. App. 752, 769 (2002) (listing the elements for equitable estoppel).

As a result, summary judgment is proper because reasonable minds could only reach one conclusion, that Defendant failed to meet the elements of promissory estoppel. *Ruff v. Cnty. of King*, 125 Wash. 2d 697 (1995).

### C. Plaintiff's Breach of Contract Claim

Plaintiff states that summary judgment is proper regarding their breach of contract claim. ECF No. 62 at 23. "To establish a claim for breach of contract, a plaintiff must show (1) a valid contract, (2) a breach of duty arising under that contract, and (3) the resulting damage." *Silvey v. Numerica Credit Union*, 23 Wash. App. 2d 535, 544 (2022). Whether a party breached a contract and the amount of damages are questions of fact. *Frank Coluccio Const. Co. v. King Cnty.*, 136 Wash. App. 751, 762 (2007); *Columbia Park Golf Course, Inc. v. City of Kennewick*, 160 Wash. App. 66, 87 (2011).

The parties do not dispute that the Contingency Agreement is a valid contract, rather they dispute if it is still a valid contract. However, as discussed,

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 25

the modification did not have valid consideration, meaning the Contingency Agreement is still in effect. *See Gattavara v. Cascade Petroleum Co.*, 27 Wash. 2d 263, 265 (1947) (modification to lease was invalid but rights under original lease were not invalid or surrendered); *Utley v. Donaldson*, 94 U.S. 29, 47 (1876) (stating where a modification was invalid, it left the original contract in place).

As of the filing of Plaintiff's Motion for Summary Judgment, Plaintiff has not received any compensation. ECF No. 89 at 152. Under the Contingency Agreement, Defendant has not fulfilled their duty of compensation. ECF No. 89 at 152. Additionally, since the Court determined that there is no present consideration for any valid modification to the original Contingency Agreement, Defendant's failure to pay pursuant to that Agreement represents a breach of contract. Based on that, the elements for a breach of contract claim are established and there is no genuine dispute of material facts. Reasonable minds could only reach one conclusion. *Ruff v. Cnty. of King*, 125 Wash. 2d 697 (1995).

Summary judgment is proper for Plaintiff's breach of contract claim for only liability. *See ex. Merrill v. Crown Life Ins. Co.*, 22 F. Supp. 3d 1137, 1147 (E.D. Wash. 2014); *Chamberlain Grp., Inc. v. Nassimi*, 2010 WL 4286178, at *8 (W.D. Wash. Oct. 25, 2010). While Plaintiff did not request summary judgment on the issue of only liability, there are other claims and defenses exhibiting disputes regarding the issue of the amount of damages. Accordingly, Plaintiff's claim for

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 26

breach of contract for only liability is proper.  The amount of damages owed is still at issue.

### D. Defendant's Defense of Mitigation of Damages

While Plaintiff does not explicitly request for summary judgment as liability only because Plaintiff does not sufficiently allege arguments for summary judgment for Defendant's defense of mitigation of damages, summary judgment is not proper.  ECF No. 62.  Moreover, this defense may affect the amount of damages.

### E. Plaintiff's Breach of Implied Duty of Good Faith and Fair Dealing Claim

Plaintiff requests summary judgment for their breach of implied duty of good faith and fair dealing.  ECF No. 62 at 29-30.  Plaintiff asserts that Defendant's failure to correct statements and provide information regarding the settlement was a violation of the implied duty of good faith and fair dealing.  ECF No. 62 at 29.  While Defendant does not directly argue this contention, Defendant continuously asserts that Plaintiff failed to inquire about this information before making a new promise or modification and that any information were not misrepresentations.  ECF No. 82.

In every contract, there is an implied duty of good faith and fair dealing. *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569 (1991).  "This duty obligates

the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569 (1991). However, it does not include that a party must "accept a material change in the terms of its contract" or enter substantive terms into the contract. *Id.* In short, this duty is based on the agreed terms of the parties. *Id.* In other words, this implied duty "is not 'free-floating' but 'exists only in relation to performance of a specific contract term[.]'" *McAfee v. Select Portfolio Servicing, Inc.*, 193 Wash. App. 220, 234 (2016) (quoting *Badgett v. Sec. State Bank,* 116 Wash. 2d 563, 570 (1991)).

However, this duty is only applicable for contracts. *See In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1269 (W.D. Wash. 2023), *aff'd,* No. 24-5176, 2025 WL 2268252 (9th Cir. Aug. 8, 2025) ("If there is no contractual duty, there is nothing that must be performed in good faith.") (quoting *U.S. Bank Nat'l Ass'n v. Tait*, No. C16-767, 2016 WL 5141990, at *7 (W.D. Wash. Sept. 21, 2016)). As a result, this is not applicable to the alleged modification of the Contingency Agreement.

However, if Plaintiff intends to state that this is relevant to the Contingency Agreement, then it must be related to the contract terms. However, since this claim must be related to a contractual term or duty and Plaintiff fails to allege one beyond failure to pay, summary judgment is improper. ECF No. 62.

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 28

## F. Plaintiff's Other Defenses

Additionally, Defendant's Motion for Summary Judgment requesting relief on unilateral mistake, Plaintiff bearing the risk of their mistakes, unconscionability or Defendant's knowledge of a mistake are improper for summary judgment because there was no consideration for the modification or a new contractual agreement. ECF No. 64. Moreover, Plaintiff confirms that they did not plead to many of the defenses argued in Defendant's Motion such as unilateral mistake or unconscionability. ECF Nos. 77 at 24-25; 64 at 24-29; 48. Additionally, many of these defenses and arguments are now moot because the alleged modification is not valid.

Moreover, any defenses or claims related to damages that were not previously discussed are retained for the issue of damages.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (ECF No. 62) is **GRANTED in part** and **DENIED in part**.

    a. Summary Judgment is proper for Plaintiff's breach of contract claim regarding only liability. Defendant's valid modification of the contract and promissory estoppel defenses and claim for declaratory judgment are **DISMISSED with prejudice.**

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 29

b. Plaintiff's breach of good faith and fair duty claim is **DISMISSED with prejudice** and Defendant's defense for failure to mitigate damages is retained and Plaintiff's breach of contract claim issue regarding damages is retained.

2. Defendant's Motion for Summary Judgment (ECF No. 64) is **DENIED.**

The District Court Executive is directed to enter this Order accordingly and furnish copies to counsel.

DATED **May 4, 2026**.



THOMAS O. RICE
United States District Judge

ORDER ON THE PARTIES' CROSS SUMMARY JUDGMENT MOTIONS ~ 30